UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ABN AMRO MORTGAGE GROUP, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:04-CV-956-SEB-JPG |
| | ) | |
| PROMISED LAND MORTGAGE LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ENTRY ON MOTION TO COMPEL**

Defendants seek to compel the Plaintiff to produce documents which Plaintiff claims are protected by the attorney/client privilege or are not discoverable based upon the work product doctrine. Pursuant to our order of October 31, 2006, Plaintiff produced for in camera inspection the following: (1) the Broker Investigation Summary; (2) the Executive Summary; (3) examples of the 2-page reports; and (4) 9 sample pages from the 171 page QA Master Spreadsheet. All of the documents had their origin in Plaintiff's Quality Assurance Department during the course of its investigation into mortgage loans generated by Defendant Romero Brice and related entities. The nature of the work of Plaintiff's Quality Assurance (hereinafter QA) Department, its relationship to Plaintiff's in-house legal department and outside counsel, the directions it received from the legal department and outside counsel, if any, in the preparation of its reports, the purpose for which the reports were prepared as well as the contents and recipients of those reports, are all material elements in the determination whether the attorney/client privilege or work product immunity shields these reports from disclosure. We have reviewed the documents produced for our review, as well as the parties' briefs and appended deposition excerpts and set

forth our analysis and rulings below.

As noted above, Plaintiff interposes objections based on both attorney/client privilege and work product immunity to Defendant's requests for these four documents.  Both doctrines govern the discovery of information arising out of the attorney/client relationship and the preparation for litigation by a corporate client and its attorney.  As a result there is a substantial amount of overlap in the protection provided to litigation materials afforded by each doctrine.  On the other hand, each doctrine serves different legal interests and thus each may cover materials not shielded by the other.  The result of this is that each document must be analyzed under the criteria of each privilege and immunity to determine whether it is required to be disclosed over the assertion of that privilege or immunity.  Thus, it is necessary to set forth at least in summary form the nature of the privilege or immunity and the criteria that govern its application.

*Attorney/Client Privilege*

The parties agree on the standard used to judge whether or not a document is subject to the attorney/client privilege.  The Seventh Circuit applies the attorney/client privilege as outlined by Wigmore: (1) Where legal advice of any kind is sought, (2) from a professional legal adviser in a capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at the client's instance permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection is waived.  *U.S. v. White,* 950 F.2d 426, 430 (7th Cir. 1991).  The burden is on the party asserting the privilege to prove its existence.

Where, as here, the client is a corporation, a slightly different formation of the basic Wigmore statement applies. The privilege applies if:

> (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1978).

Two significant limitations, over and above the obvious requirement that all of the criteria in the Wigmore and *Diversified* formulations be present, concern the concepts of communication and waiver. The attorney/client privilege protects communications not underlying facts. Facts otherwise available to the requesting party are not shielded by the attorney/client privilege merely because they may have been communicated to legal counsel. It is the communication itself that is protected. Put another way, as we will see, in the case of one of these documents: No communication, no privilege.

The concept of waiver derives from the essence of the privilege, the protection of confidential communications. Just as the absence of a communication is fatal to the privilege; similarly, should the communication cease to be confidential, that is by dispersal beyond the attorney/client relationship, the privilege is lost.

*Work Product Doctrine*

Codification of the principles of the work product doctrine, first recognized in *Hickman v. Taylor*, 329 U.S. 495 (1947), can be found in Fed.R.Civ.P. 26(b)(3).  That rule provides a qualified protection from discovery in a civil action when materials are (1) documents and tangible things otherwise discoverable, (2) prepared in anticipation of litigation or for trial, and (3) by or for another party or by or for that other party's representative.  Fed.R.Civ.P. 26(b)(3).  To overcome the qualified protection, the party seeking discovery needs to show that it has a substantial need for the materials and an inability to obtain the equivalent without undue hardship.  Fed.R.Civ.P. 26(b)(3).

In the case of the work product immunity, the purpose of the creation of a document is often critical to the availability of immunity.  To secure the doctrine's protection, documents must be prepared primarily because of the prospect of litigation.  The converse proposition is that documents prepared in the ordinary course of the business of a corporation do not receive work product protection, even if in a certain number of cases, litigation may well be likely.  *See Logan v. Commercial Union Ins. Co.*, 94 F.3d 971, 977 (7th Cir. 1996).  As is often the case, the proposition is easier to state than to apply.  Courts look at the nature of the business.  For instance, documents generated in the claims department of an insurer are usually deemed not protected.  The nearness in time to litigation is relevant.  Also, the involvement of attorneys in the direction and creation of the document is often, but not always, conclusive on the question of litigation related purpose.  *See Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 372 (N.D. Ill. 1972).  What is clear is that a determination of litigation purpose is to be

made after a review of the nature of the document in relation to the business of the entity that created it in the light of all the factors set forth above.

With this background in mind we turn to the nature of the work of Plaintiff's Quality Assurance Department and the nature of the four documents which derived from that work.

### *Quality Assurance Department and Its Investigations Department* .

What we know of the QA Department is derived from the depositions of Lorie Miller, who headed the investigations department of QA and of Keith Smillie, outside counsel to ABN AMRO's Mortgage Group. Ms. Miller's investigations department exists to investigate suspected cases of fraud against her employer in the issuance of mortgage loans. (Miller Deposition at 43). In this process, she works "hand in hand" with Plaintiff's legal department and its outside counsel, Mr. Smillie. (*Id*. at 45). In the investigations she directs, employees of her department audit loans when suspicious activity is called to her attention. Typically, several loans by a broker will be reviewed. As part of this review, information about the loans is entered into a computer database in a "Access" format. (*Id*. at 45). The fields in the database were determined by Mr. Smillie with input from Ms. Miller based on the information he needed to ascertain the existence of actionable fraud and to enable him to recommend to Plaintiff's management the initiation of litigation (or not) against responsible parties. (Smillie Deposition at 61-62, Miller deposition at 393-394).

As the investigation of a suspected fraud progressed and in particular in the case of the Promised Land loans, Ms. Miller would meet weekly to review with Mr. Smillie the status of

each investigation. At such meetings, a spread sheet was created from the information in the Access database (Miller Deposition at 49-50). All of the inputs to this database were made by the QA investigations department. Only they and the legal department had full access to this database. (Miller Deposition at 46). This database existed so that all of the suspect loans generated by a suspected originator could be collected, analyzed and compared with an eye to potential recovery through litigation.

### *The QA documents*.

Although all the documents here at issue have their origin in the Access database, two types are directly derived from that database without any additional input or analysis. These are the QA Master Spreadsheet and the 2-Page Reports are individual loans. To understand the application of the asserted privileges and immunities, a further exploration of the Access database is required.

At the risk of resort to a perhaps over-used metaphor, one can consider the database of this sort as a file cabinet. The Investigations Department headed by Ms. Miller was provided a file cabinet with a drawer for each investigation. In the drawer are empty file folders to be filled as the investigation proceeds. The file folders are named by Mr. Smillie according to the materials he needs to analyze to determine the existence of a fraud loss and plaintiff's likely ability to recover for that loss in litigation. As the investigation proceeds, the investigators file materials into the "Promised Land" file drawer in the appropriate file folders. From time to time, the contents of the file drawer are reviewed by Ms. Miller and Mr. Smillie. At the conclusion of

the investigation the entire contents of the file drawer are delivered to Mr. Smillie for his use in determining whether to recommend the initiation of litigation.[1]

Although admittedly stylized, the foregoing represents the "Access" Database and the product of its output, the 171 Page Master Spreadsheet. Applying the principles of the attorney/client privilege, it would appear that the Master Spreadsheet is a communication made to legal counsel from an employee of Plaintiff for the purpose of obtaining legal advice, that is, the availability of a legal recovery for fraud and the desirability of pursuit of that remedy.

What is more problematical is the application of waiver, or as set forth in the *Diversified Industries* formulation, whether the communication was confined within the corporate structure to those with a need to know. In her deposition, Ms. Miller noted that others within the Plaintiff's organization have access to some but not all of the contents of the database. Who these persons might be and for what purposes they might be able to access the database were questions Ms. Miller was unable to answer. (Miller Deposition as 46-47). Thus, it is not possible at this time to state with certainty that the Promised Land Spreadsheet is a protected communication by operation of the attorney/client privilege.

Fortunately, the analysis under work product immunity is much more clear. As noted above, the data in the Spreadsheet have been arranged into categories at the direction of legal counsel to facilitate his provision of legal advice on whether to initiate litigation. (Smillie

---

[1] With apologies, we might consider this "the (file) cabinet of (Dr.) Smillie."

Deposition at 61-62). Upon these facts, the Spreadsheet is a document prepared in anticipation of, that is because of, litigation and not in the ordinary course of business.

However, the foregoing does not conclude the analysis under the work product doctrine. Work product immunity is a qualified immunity. It can be overcome upon a showing of substantial need. In this case, a primary defense is the statute of limitations. In particular, there will be a major issue as to when this cause of action accrued from the standpoint of the discovery rules, that is, when a reasonable party in the position of Plaintiff should have known it had sustained an injury at the hands of a particular Defendant. In such an inquiry, the information available to Plaintiff during April, May and June of 2002 about possible fraud by Promised Land and negligence on the part of closing agents is critical to the defense. Of course, this information is uniquely within the knowledge of the QA Department and its Investigation Department. The contents of the Access database, at the relevant time, could be critical to this determination, if such information can be derived.

The spreadsheet provided to the Court is one which appears to be generated during the summer of 2006. Despite this, the format and arrangement of information will be useful to Defendants, as well as the information itself, though much of this has apparently already been provided to Defendants through Plaintiff's loan files. Thus, the Court concludes that Defendant has shown substantial need for the production of the Access Spreadsheet.

However, a final exception regarding so-called attorney opinion work product comes into play. The Rule directs Courts to "protect against disclosure of the mental impressions, conclusions or legal theories of an attorney or other representative." Several of the categories

and the information contained therein clearly fall within this protection based on the Court's inspection. Accordingly, the last four categories of the Spreadsheet may be redacted in the production ordered herein.

The foregoing determination to order production of a redacted version of the Spreadsheet also clarifies the availability of the attorney/client privilege. The document ordered produced is not the document communicated to counsel. What remains is merely a collection of facts, most already disclosed to Defendants. As such, it does not qualify as an attorney/client protected document.

The foregoing also resolves the applicability of the privilege and immunity to the two-page reports. This item is simply a slice as it were by individual borrowers of the "Access" database. The same information available in the individual two page reports is being provided with the production of the redacted spreadsheet. Further, these reports are also not protected by the attorney/client privilege as it is clear that the reports were never communicated in that format to counsel. (Miller Deposition at 58).

Ms. Miller testified in deposition that at the conclusion of her investigation, she provides for Mr. Smillie in addition to the Master Spreadsheet, a broker investigation summary. (Miller Deposition at 59). *See also* Smillie Deposition at 30-38. The broker investigation summary is prepared for legal counsel to provide a final summary of the investigation. As such, it is clearly attorney/client material. (Miller Deposition at 63). As before there is some indication of possible waiver as Ms. Miller testified that others can receive the broker information summary. (Miller Deposition at 64). What remains unclear is whether the broker summary on Promised

Land was dispersed outside those with need to know as it relates to attorney/client matters.

Again, the work product doctrine provides a clearer outcome. This document was prepared at counsel's instance and at counsel's direction as to information and format. The summary is provided to facilitate a decision on the initiation of litigation. (Smillie Deposition at 30-31). As such it is protected work product. However, while the same issues of substantial need are present with the broker summary, it is not possible to redact out the opinion work product. Accordingly, the document is protected as opinion work product and need not be disclosed. The Court will disclose that those portions of this document that relate to title companies and closing agents carry an "Effective Date" of April 28, 2004.

The final document at issue is the item denominated as the executive summary. This document is actually prepared by counsel and directed to management and provides the advice on whether to initiate litigation. (Miller Deposition at 61, 68). As such it is clearly protected by both the attorney/client privilege and the work product immunity for opinion work product. As such it need not be produced.

*Conclusion*

Defendants' Motion to Compel is granted in part and denied in part.  Plaintiff is ordered to produce the Master Spreadsheet in its existing form with the last four categories redacted.  In all other respects, the Motion is DENIED.  Each party is responsible for its own costs.

IT IS SO ORDERED this 8th day of January, 2007.

_____
JOHN P. GODICH, MAGISTRATE JUDGE
United States District Court
Southern District of Indiana

Copies to:

**Tracy Nicole Betz**
SOMMER BARNARD ATTORNEYS
tbetz@sommerbarnard.com,KAWright@sommerbarnard.com

**Gregory H. Coleman**
CLARK COLEMAN & FREEMAN
ccfnattys@aol.com,ryznr@aol.com

**Timothy L. Corbin**
margaretcorbin@sbcglobal.net

**Dale W. Eikenberry**
WOODEN & MCLAUGHLIN LLP
deikenberry@woodmaclaw.com,drichards@woodmaclaw.com

**Shawna Meyer Eikenberry**
BAKER & DANIELS
shawna.eikenberry@bakerd.com,wjmoore@bakerd.com

**Kathleen I. Hart**
BOSE MCKINNEY & EVANS, LLP
khart@boselaw.com,jupshaw@boselaw.com

**Christine Kaye Jacobson**
WOODEN & MCLAUGHLIN LLP
cjacobson@woodmaclaw.com

**Andrew Todd Kight**
SOMMER BARNARD ATTORNEYS, PC
akight@sommerbarnard.com,ecfclerk@sommerbarnard.com

**Tammy Lynn Ortman**
HARRISON & MOBERLY
tortman@h-mlaw.com,lemerson@h-mlaw.com

**Anthony W. Overholt**
LOCKE REYNOLDS LLP
aoverholt@locke.com,lmyers@locke

.com

**F. Anthony Paganelli**
SOMMER BARNARD ATTORNEYS, PC
paganelli@sommerbarnard.com,mmendenhall@sommerbarnard.com

**Mark A. Voigtmann**
BAKER & DANIELS
mvoigtmann@bakerdaniels.com,dalee@bakerd.com,akcastor@bakerd.com

**Thomas E. Wheeler , II**
LOCKE REYNOLDS LLP
twheeler@locke.com,kdickerson@locke.com

**A. Donald Wiles , II**
HARRISON & MOBERLY
dwiles@h-mlaw.com,lemerson@h-mlaw.com

**Carina M. de la Torre**
BOSE MCKINNEY & EVANS, LLP
cdelatorre@boselaw.com,pdidandeh@boselaw.com